Joseph Hiram HOLT, Jr., a minor, by his Next Friend, Joseph Hiram Holt and Joseph Hiram Holt and Elwyna Holt, Appellants,

v.

RALEIGH CITY BOARD OF EDUCATION, A Body Corporate, Appellee.

No. 7758.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 6, 1959.

Decided March 19, 1959.

Samuel S. Mitchell and Herman L. Taylor, Raleigh, N. C. (Taylor & Mitchell, Raleigh, N. C., on brief), for appellants.

Thomas F. Ellis and J. C. B. Ehringhaus, Jr., Raleigh, N. C., for appellee.

Malcolm B. Seawell, Atty. Gen. of North Carolina (Ralph Moody, Asst. Atty. Gen. of North Carolina, on brief), for the State of North Carolina, amici curiæ.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge:

This action was brought on behalf of Joseph Hiram Holt, Jr., a Negro student, fifteen years of age, residing in Raleigh, North Carolina, to secure a transfer from the Ligon High School to the Broughton High School in that city. The plaintiffs are the minor child, by his father as next friend, and his parents, and the defendant is the Raleigh City Board of Education.

Up to this time only colored students have attended the Ligon School and only white students the Broughton School. The authority to provide for the assignment and enrollment of pupils in the public schools of the State is conferred

upon County and City Boards of Education by the General Statutes of North Carolina, 1957 Cumulative Supplement, Chapter 115, Article 21, §§ 115–176 to 115–179. Section 115–178 relating to reassignment of pupils is as follows:

"§ 115–178. *Application for reassignment; notice of disapproval; hearing before board.*—The parent or guardian of any child, or the person standing in loco parentis to any child, who is dissatisfied with the assignment made by a board of education may, within ten (10) days after notification of the assignment, or the last publication thereof, apply in writing to the board of education for the assignment of the child to a different public school. Application for reassignment shall be made on forms prescribed by the board of education pursuant to rules and regulations adopted by the board of education. If the application for reassignment is disapproved, the board of education shall give notice to the applicant by registered mail, and the applicant may within five (5) days after receipt of such notice apply to the board for a hearing, and shall be entitled to a prompt and fair hearing on the question of reassignment of such child to a different school. A majority of the board shall be a quorum for the purpose of holding such hearing and passing upon application for reassignment, and the decision of a majority of the members present at the hearing shall be the decision of the board. If, at the hearing, the board shall find that the child is entitled to be reassigned to such school, or if the board shall find that the reassignment of the child to such school will be for the best interests of the child, and will not interfere with the proper administration of the school, or with the proper instruction of the pupils there enrolled, and will not endanger the health or safety of the children there enrolled, the board shall direct that the child be reassigned to and admitted to such school. The board shall render prompt decision upon the hearing, and notice of the decision shall be given to the applicant by registered mail."

On May 30, 1957, the Board of Education of the City of Raleigh issued a certificate that the minor plaintiff had satisfactorily completed the ninth grade in the Ligon School and assigned him to the same school for the ensuing year. On June 8, 1957, his parents filed with the principal of the school an application for the reassignment of the child to the Broughton School on the grounds: (1) that the Ligon School was three miles from his residence, while the Broughton School was less than a mile distant; (2) that the Broughton School offered a fuller academic and extra-curricular program, and (3) that the transfer would remove the stigma of racial segregation.

The application was referred to the Board of Education which, after some discussion, set the matter down for consideration at a regular meeting of the Board to be held on August 6, and directed its Secretary to request the child and his parents to attend the meeting since there probably would be questions which the members of the Board would desire to ask them. Accordingly, the plaintiffs were notified of the meeting and were requested to be present; but they failed to attend. Their attorneys wrote to the Board that the plaintiffs would not attend the meeting but would await the decision of the Board upon their application since, under the statute above quoted, the Board's initial action on an application for reassignment was purely ex parte. In the absence of the plaintiffs, the Board met and considered the application at the appointed time and adopted a resolution denying the application at that time "in the public interest and in the interest of Joseph Hiram Holt, Jr."

The plaintiffs were notified of this decision and within ten days thereafter, as required by the statute, made application for a hearing. In response the

Board called a meeting for August 23, and notified the plaintiffs. They failed to appear in person at that time also but were represented by their attorneys, who requested the Board to rescind its denial of its application. The Board then adopted a resolution that a committee of the Board give further study to the matter and report at the next meeting of the Board. This was accordingly done. The report of the committee recommended that the prior action of the Board be not rescinded and the Board approved this recommendation.

The present suit was then instituted, in which the plaintiffs prayed the court to issue a mandatory injunction requiring the Board to admit the minor plaintiff to the Broughton School without regard to his race or color. The question came on for hearing in the District Court, in which the following facts were proved.

It was brought out in the testimony that the plaintiffs' application was the first application for the transfer of a colored child to a white school, or vice versa; and that the Board desired the presence of the plaintiffs at the meeting of August 6th in order that it might obtain additional information about the case and, amongst other things, ascertain the basis of the plaintiffs' statement that the academic program at the Ligon School was inferior to that at the Broughton School. Members of the Board testified that they were influenced in their final decision by what they considered to be best in the interest of the child as well as in the public interest, and some of them testified that the race of the child was one of the elements that influenced their conclusion. The District Judge upheld the action of the Board and dismissed the complaint on the ground that the plaintiffs had failed to exhaust the administrative remedies provided by the statute by declining to attend the meetings of the Board when the matter was under consideration. He relied on the decisions of this Court in Carson v. Board of Education of McDowell County, 227 F.2d 789, and Carson

v. Warlick, 238 F.2d 724, where we held, in respect to the North Carolina statute in question, as it appeared in Chapter 366 of the Session Laws of North Carolina of 1955, that if an administrative remedy is provided by state law for persons who are aggrieved by the action of school officials, the courts of the United States will not interfere until the statutory remedy has been exhausted.

It is contended by the plaintiffs that the application of this rule in the case as bar was erroneous. It is pointed out that § 115–178 of the statute provides that parents who desire reassignment of a child must first make application to the Board within ten days after the assignment is made, and if their application is refused they must then apply to the Board for hearing within five days, and that there is no requirement that the parents attend the meeting of the Board at which the application is first considered nor any requirement that the applicants attend the subsequent hearing in person. Having filed the application for reassignment and the petition for hearing within the prescribed periods, and having attended the hearing by attorneys, it is said that the plaintiffs have satisfied every requirement of the Act.

The basis of the plaintiffs' position seems to be that the statute cannot be construed to clothe the Board with investigatory powers and functions and also with the authority and duty to conduct a final hearing of a quasi-judicial character in order to make a final determination of the plaintiffs' application. Such a construction, it is argued, is not tenable since the exercise of general exploratory and investigatory powers would disable the Board from conducting the impartial hearing which the statute requires it to hold. Hence, it is said that the parents and child had no proper place at the meeting of the Board on August 6, and the Board had no power to request them to attend to submit to interrogation. In this connection, the plaintiffs refer to Ohio Bell Telephone v. Public Utilities, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093.

█ We cannot agree with this analysis. In this day when administrative agencies and tribunals carry on the operations of government in many fields of activity, it would be an anachronism to hold that investigatory and quasi-judicial powers may not be conferred upon the same governmental agency. Indeed, such a combination of functions is established practice generally approved by the courts and subject to judicial review in case of abuse. In the operation of the public schools, such an arrangement is well-nigh essential and the North Carolina statute implies that both functions shall be exercised by the boards of education. We think that in this instance the Board, when requested to transfer the child from one school to another, was clearly within its right before making its initial decision in requesting the child and his parents to appear for interrogation, and that they on their part were clearly delinquent in refusing to attend and to furnish all relevant information in their possession. They were not justified in deferring their appearance until the "formal hearing" provided by the statute for a review of an adverse decision, or failing, even at that stage, to appear in person and submit to examination by members of the Board. The situation was well described in the following passage from the opinion of the District Judge [164 F. Supp. 866]:

"* * * It must be remembered that the written application for a change of assignment complained, in addition to racial discrimination and the difference in distance from plaintiffs' home to the two schools involved, that Broughton High School offered all the courses in which the minor plaintiff was interested and a fuller academic and extra-curricular program. Many of the Board members who testified at the trial stated that they were particularly interested in this phase of the complaint, as they had considered that Ligon High School was comparable in every respect, including the curricula offered, with the Broughton High School. It perhaps could logically be argued that these complaints were not necessary in order to entitle the minor plaintiff to reassignment, but the plaintiffs nevertheless saw fit to include these complaints in their application and it would seem that since the complaints had been made that the Board members had the right to discuss these complaints with the minor plaintiff and his parents. Further, the Board undoubtedly had the right to inquire into many other relevant and pertinent matters in order to gain sufficient information to enable it to make the findings required by statute."

█ We are not to be understood as approving the deliberate segregation of the races in the public schools of the city or the questioning of applicants on irrelevant matters. The regulations adopted by the Board in 1957, pursuant to § 115–176 of the statute, tended to perpetuate the system, for they provided that each child attending a school by assignment of the Board was assigned to the same school for the ensuing school year. Moreover, certain members of the Board testified in the District Court that they were influenced, at least in part, in passing on the application for reassignment by the race of the plaintiffs. With these and other pertinent considerations in mind the District Judge might not have felt obliged to dismiss the complaint if he had reached the merits of the case, but he was restricted in the scope of his decision by the failure of the plaintiffs to do their part in giving effect to the plan of the statute. In so doing, he was acting in accordance with the rule approved by this court that persons aggrieved by the actions of the school officials of a State may not appeal for relief to the Federal courts until they have exhausted the remedies afforded them by the statutes of the State.

Affirmed.