271 F.2d 132
 Lee PARHAM et al., President, Secretary and Members of the
Board of Directors, Dollarway School District Number 2,
Jefferson County, Arkansas; Dollarway School District Number
2, a Corporation; and Charles L. Fallis, Superintendent of
Public Schools of said School District, Appellants,
v.
Earnestine DOVE, a Minor, Age 16, by her Father and Next
Friend, et al., Appellees.
Earnestine DOVE, a Minor, Age 16, by her Father and Next
Friend, et al., Appellants,
v.
Lee PARHAM et al., President, Secretary and Members of the
Board of Directors, Dollarway School District
Number 2, Jefferson County, Arkansas, et
al., Appellees.
 Nos. 16323, 16327.
 United States Court of Appeals Eighth Circuit.
 Oct. 8, 1959.
 
 Robert V. Light and Herschel H. Friday, Jr., Little Rock, Ark., for Lee Parham, et al.
 Robert L. Carter, New York City, and George Howard, Jr., Pine Bluff, Ark., for Earnestine Dove, et al.
 Bruce Bennett, Atty. Gen., for the State of Arkansas as amicus curiae.
 Before JOHNSEN, Chief Judge, and VAN OOSTERHOUT and MATTHES, Circuit judges.
 JOHNSEN, Chief Judge.
 
 
 1
 Three Negro students (16, 13 and 12 years of age) sought, on the ground of existing segregation, to have the court order their immediate admittance to a particular school, in Dollarway School District Number 2, of Jefferson County, Arkansas, without regard to the provisions of the Arkansas Pupil Assignment Law of 1956,[1] which was in effect at the time the suit was instituted, or to the provisions of the Arkansas Pupil Placement Act of 1959,[2] which was in effect at the time the action came to trial. Part of the relief for which the plaintiffs prayed was to have the legislative measures declared to be unconstitutional.
 
 
 2
 Because of the demand for a declaration of unconstitutionality, a three-judge district court was constituted under 28 U.S.C.A. 2281 and 2284. That court, on convening, felt that both the preceding statute and the superseding statute,[3] had to be legally regarded as not being unconstitutional facially, and that there was accordingly no occasion for a three-judge court to hear the matter. It therefore dissolved itself and referred the case back to the individual judge, on whose docket it had arisen, for trial and determination.
 
 
 3
 On subsequent trial, the single-judge court entered a decree, D.C., 176 F.Supp. 242, declaring both the 1956 and 1959 Acts to be constitutional on their face, but holding that, notwithstanding this fact, the legislative measures were not required to be given application in the situation on the question of the right of the plaintiffs to be admitted to the school involved. The court ordered the Board of Directors and the Superintendent of Schools of the District, and the District itself, as defendants, to admit the plaintiffs unconditionally to the school involved, at the opening of the 1959-1960 school year, but it directed that the defendants employ and apply the Pupil Placement Act of 1959, within the doctrine of the Brown v. Board of Education cases, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, as to the rest of the segregation situation of the District.
 
 
 4
 The principal contention which had been urged by the defendants on the trial was that the plaintiffs had not exhausted the administrative procedures and remedies, for which both the 1956 and the 1959 Acts made provision, as a requirement for obtaining an assignment of them to a different or a particular school, and as a basis for being able to claim a constitutional violation and discrimination; and that they therefore were not entitled to seek judicial relief.
 
 
 5
 The defendants took an appeal from the part of the court's decree which required them to make admission of the plaintiffs to the particular school involved, without regard to the provisions of the 1956 and 1959 Acts. The plaintiffs too took an appeal, from the holding of the court that the 1956 and 1959 Acts were constitutional on their face.
 
 
 6
 Because of the delay which otherwise seemed likely to result in the opening of the 1959-1960 school year of the District, we advanced the appeals for hearing, and they were argued and submitted to us on September 21, 1959. On that same day, after making determination, we announced our decision from the bench, affirming the court's holding on the plaintiffs' appeal, and reversing the court's holding on the appeal of the defendants.
 
 
 7
 An order was conformingly entered by us affirming the court's holding that the Acts of 1956 and 1959 were not unconstitutional on their face; reversing the court's holding to the effect that, notwithstanding this fact, the defendants were not entitled in the circumstances of the situation to have the use or benefit of the 1959 Act in determining to what school the plaintiffs had a right to be assigned for the current school year, and that plaintiffs could not be required to exhaust the administrative procedures and remedies provided by such Acts in relation to such assignment as the Superintendent of Schools might assume to make of them; and vacating the mandatory injunction which the court had issued directing the defendants to make admission of the plaintiffs to the school they sought to attend, without regard to the provisions and procedures of said Acts.
 
 
 8
 We made inquiry from the bench whether, and were given assurance by counsel for the defendants that, under the statute and the implementing regulations of the Board, there would be available an opportunity to the plaintiffs to make application for assignment to the school to which they sought to be admitted and have that application determined, in relation to the 1959-1960 school year. In this connection, we included a provision in our order that the proceeding would on remand of the cause be allowed to remain open on the records of the District Court, to permit of the filing of such supplemental complaint, if any, as might be entitled to be presented, in case of any unconstitutional application of the 1959 Act against the plaintiffs or of any other unconstitutional action on the part of the District against them.
 
 
 9
 To safeguard further against the possibility of delay in respect to the opening of the school year, we ordered that our mandate should be forthwith issued, with a reservation, however, of the right on our part to subsequently file this opinion, in fuller expression of our action and order. Since, however, it was clear that the District had not up to that time adopted any formal plan or taken any other steps publicly to disestablish segregation in the school system, we deemed it appropriate to require, and made our order provide that the defendants should be enjoined, and an injunction was directed to be issued to prevent them, from continuing to maintain the system of unconstitutional segregation, which had previously existed in the District.
 
 
 10
 In respect to our affirmance of the trial court's holding that the 1956 and 1959 Acts were not unconstitutional on their face, we deem it sufficient to make only a brief expression.
 
 
 11
 The Arkansas Pupil Placement Act of 1959 is identical with (except for a difference in one word), and apparently was copied from, the Alabama School Placement Law, which had precedingly been held, by a three-judge district court in Shuttlesworth v. Birmingham Board of Education, D.C.N.D.Ala.1958, 162 F.Supp. 372, not to be capable of being branded as unconstitutional on its face.
 
 
 12
 The Negro plaintiffs in that case were denied the admittance relief which they sought, as here, without having resorted to the administrative procedures of the Placement Law, on the grounds, as stated in the court's opinion, that it was 'possible for the Act to be applied so as to admit qualified Negro pupils to nonsegregated schools', and that the court could not say, 'in advance of its application, that the (Placement) Law would not be properly and constitutionally administered'. At pages 381 and 382, of 162 F.Supp.
 
 
 13
 The court summarized its holding in a concluding paragraph, as follows: 'All that has been said in this present opinion must be limited to the constitutionality of the law upon its face. The School Placement Law furnishes the legal machinery for an orderly administration of the public schools in a constitutional manner by the admission of qualified pupils upon a basis of individual merit without regard to their race or color. We must presume that it will be so administered. If not, in some future proceeding it is possible that it may be declared unconstitutional in its application.' At page 384, of 162 F.Supp.
 
 
 14
 An appeal was taken by the plaintiffs to the Supreme Court, where the judgment was affirmed 'upon the limited grounds on which the District Court rested its decision'. 358 U.S. 101, 79 S.Ct. 221, 3 L.Ed.2d 145.
 
 
 15
 We shall not here detail the provisions of the Arkansas Pupil Placement Act of 1959, which has been set out in full in Footnote 4 of the trial court's published opinion, D.C., 176 F.Supp. 242. The factors which the Act authorizes to be taken into account in the assignment or placement of pupils among the public schools of the state as existing in the individual school districts thereof-- and indeed which the Act says 'shall be considered, with respect to the individual pupil'-- may be found also in the Shuttlesworth opinion, 162 F.Supp. at page 382, where the similar standards of the Alabama Placement Law are quoted.
 
 
 16
 Attention may, however, in passing, be called to the protective provisions of Section 9 of the Act, permitting 'an exception before such Board to the final action of the Board as constituting a denial of any right of such minor guaranteed under the Constitution of the United States' (176 F.Supp. 246); authorizing the Board to give reconsideration to its action on this basis; and (beyond the right which exists in general to obtain judicial vindication of a personal constitutional violation) creating also a special remedy of judicial review on this ground for any such denial of a constitutional right by a Board, with provision for a trial de novo of the facts of the particular situation for purposes of that question.
 
 
 17
 Thus, so far as the face of the statute is concerned, there is no basis to say, in legal construction, that the Act is designed, or that it can only operate, to maintain segregation and to prevent integration in a school system.[4] On the other hand, as emphasized in the Shuttlesworth case, 162 F.Supp. at page 384, the statute cannot, because of its facial constitutionality, be made to serve through artificial application, as an instrument for maintaining or effecting a system of racial segregation. It cannot be given an application designed to escape or by-pass the Brown cases. Recognition of and obedience to the holdings of the Brown cases must implicitly exist in its operation and application.
 
 
 18
 Accordingly, any scrutiny which the federal courts may be called upon to make of what has been done under such a statute, where a charge of racial discrimination is involved, must necessarily be within the focus and tests of its lack of disharmony with the objective, the obligation and the responsibility dictated by the Brown cases. Insofar as the question of desegregation is concerned, a placement or assignment statute, such as the Arkansas Act, is entitled to have play, on the basis of state sovereignty, as a means or an aid for effecting a sound and orderly distribution of pupils, in relation to all the problems of a public school system, except those of purely racial consideration. Differences in the practical problems of eliminating racial segregation under the varying situations of states or local districts must look for their margins of latitude in effecting that result to the principles laid down in Brown v. Board of Education, 349 U.S. 294, 299-300, 75 S.Ct. 753, 756, 99 L.Ed. 1083.
 
 
 19
 In this field of constitutional paramountcy, a placement or assignment statute is entitled to be accorded recognition only as an implement or adjunctive element on the part of a state for effecting an orderly solution to its desegregation difficulties, in proper relationship to its other school-system problems, but with a subservience to the supreme-law declaration of the Brown cases as to all imposed segregation and the obligation owed to get rid thereof within the tolerance entitled to be allowed play under these decisions for accomplishing that result.
 
 
 20
 But there is no need here to extend further these generalized observations. Reverting to the facial constitutionality of the Placement Act, it follows that the plaintiffs are without any general public-school right under Arkansas law to seek admission to a particular school, except on the basis of and in accordance with the provisions of that Act. While their federal constitutional rights have been previously violated in that they have been required to attend a school segregated under administrative authority, the Placement Act provides a means for them now to seek admission to the school which they think they are otherwise entitled to attend and, insofar as the provisions of the Act are concerned, have their right to do so determined without regard to their race or color.
 
 
 21
 Section 4 of the Act permits a Board of Education to delegate to the Superintendent of Schools the general task of making assignment of pupils among the schools of a District. But Section 7 makes provision for a right on the part of a parent or guardian of a pupil to file objections in writing to an assignment so made, to make request for a transfer of the pupil to a designated school, and to demand a hearing. The Board is required in such a situation to hold a hearing within a fixed time and to allow the presentation of evidence. 'It shall be the duty of each local Board to hear and consider all witnesses appearing before the said Board and having information pertinent and relative to the matter and to consider all relevant documentary evidence.' 'No final order shall be entered in such case until each member of the board of education has personally considered the entire records.' (176 F.Supp. 246)
 
 
 22
 The Board must make findings of fact as a basis for its decision, 'and such findings and action shall be made a part of the records of the local Board.' Also, as has been mentioned above, there is a provision for having any claim of unconstitutionality in its action called to the Board's attention, through allowing to be filed 'an exception before such Board to the final action of the Board as constituting a denial of any right of such minor guaranteed under the Constitution of the United States * * *'.
 
 
 23
 The plaintiffs here have given no recognition to these administrative provisions and requirements, as they existed under either the 1956 or the 1959 Act. All that they did in respect thereto was to make oral request, through their parents, of the Superintendent of Schools, to be permitted to enroll in the school to which they sought admittance. The Superintendent refused this request and told them that they would have to enroll in the school (all-Negro) which they had previously attended. The parents filed no written request with the Board for assignment or transfer and for a hearing, and there has never been any Board action under the statute with respect to the situation.
 
 
 24
 The plaintiffs have contended for purposes of this suit, both in the trial court and here, that they were not required to resort to the procedure of the Act for having the School Board pass upon the question of their right to be transferred and to be enrolled in the school to which they sought admittance, because to do so would have been futile in the situation, and that they thus were entitled to be regarded as having constructively exhausted their administrative remedies under the Act.
 
 
 25
 The trial court adopted this view, in decreeing immediate admittance of the plaintiffs without regard to the administrative prescriptions, procedures and remedies of the Acts. It held that the defendants had 'carried into effect, enforced and maintained, a rigid, racial segregation policy in all of its schools, which, without exception, permitted no entry of any colored child into its white schools'; that 'the Board intends a continuation of that policy, without change or modifications and * * * its professing of the Pupil Enrollment Act of 1956 having been applied and in operation during the years 1957, 1958 and 1959, is but a cover-up to conceal its antiracial and pro-racial segregation attitude'; that the plaintiffs had applied for admission to the school involved on three separate occasions and each time had had their requests refused, and 'Another one, on a petition for hearing before the Board, would indeed have been futile and therefore not required as a requisite to the commencement of this suit'; and that the plaintiffs therefore were entitled to be legally regarded as having 'exhausted their administrative remedies, actually, under the Act'.
 
 
 26
 It is true that the several schools of the District had been continued to be operated with racial enrollments only. The defendants asserted that this situation had obtained because request in accordance with the statute had never been made to the Board, under the provisions of either the 1956 or the 1959 Act, for reassignment or transfer to another school by anyone. Their position, both in the trial court and here, is summarized by their counsel as follows: 'They (the Board) have continued to operate the schools just as they did before 1954, with one vital exception. They are now bound by law, and sincerely recognized that they are so bound, to make assignments without discrimination because of race.'
 
 
 27
 The lack of any affirmative plan or action to disestablish the segregation status which had unconstitutionally been set up in the District, other than as the Board might be called upon to deal under the provisions of the 1956 or the 1959 Act with some individual application for assignment to another school, would perhaps not measure up to the legal and moral responsibility resting on a Board under the expression and holding of the Brown cases. But we do not think that it is judicially wise or necessary to impatiently declare that desegregation should on this account be sought to be achieved, without regard to the overall pattern which the District is entitled to create through a constitutional application of the Placement Act, by assuming to excuse some individual student from the requirements of the assignment or placement statute. It must be recognized that the plaintiffs have not been without opportunity, since 1956, to request assignment or transfer on the basis of legislative non-racial scheme, and to have any unconstitutional application of that legislative scheme attempted to be made against them righted by the federal courts.
 
 
 28
 If there could be any right on the part of the courts to disregard the placement or assignment statute before use and application of it, it would only be on the basis that it was legally certain that it was going to be used as a subterfuge for effecting an unconstitutional result. The difficulty with the waiver made by the trial court of the procedures of the statute here is that we do not believe that it is legally capable of being said in the situation that a resort by the plaintiffs to the statute would have resulted in an unconstitutional application of it against them and so would have been a useless and futile act.
 
 
 29
 It might perhaps be capable of being inferred, from what they have failed to do in the District on their own responsibility, that the members of the Board are all segregationists in their convictions-- although only one of them was called upon to testify at the trial. This was the President of the Board, who frankly admitted that the District had no plans for 'a wholesale integration', but who further stated that any applications made to the Board by individual Negro students for admission to the school involved under the provisions of the placement statute would, so far as he was concerned, receive 'consideration without race', and that he would vote to admit any such student, without regard to race, if he was persuaded by the evidence on a hearing that the student possessed the requisite qualifications under the statute. 'I'm a law-abiding citizen, and under the law I would vote 'yes'.'
 
 
 30
 But the lack of right to say as a matter of legal certainty what the result of an application by the plaintiffs to the Board for a transfer and for a hearing thereon would be does not stem from this testimony of the President of the Board and a crediting of it. It turns upon the legal aspect that what the statute provides for and requires the Board to engage in as to such an application, where rights are claimed to be involved, is a quasi-judicial hearing and decision. Whatever might be the personal views of the members of the Board upon the segregation question, this does not afford a basis recognized in law for allowing conclusion and forecast to be made of their decision, where the matter is entrusted to them in a quasijudicial capacity and responsibility.
 
 
 31
 The statute makes of the Board the equivalent of an administrative tribunal, with the power and duty of engaging in adjudicatory function, including the consideration of the possibility of constitutional violation in relation to its result. No more than in the case of any other administrative agency, or of a court, does it seem to us that there can properly be recognized an anticipatory right to brand such a proceeding before the Board, in its official responsibility for administration of the statute, as being legally futile and so unnecessary. Even the important problem of school desegregation cannot soundly permit of such a departure from established legal concept and fundamental principle.
 
 
 32
 It is for this reason that we think there is controlling here, and that we adopt, what was said in Carson v. Board of Education, 4 Cir., 227 F.2d 789, 790: 'Where the state law provides adequate administrative procedure for the protection of such rights, the federal courts manifestly should not interfere with the operation of the schools until such administrative procedure has been exhausted and the intervention of the federal courts is shown to be necessary'.
 
 
 33
 In a subsequent case, Carson v. Warlick, 4 Cir., 238 F.2d 724, certiorari denied 353 U.S. 910, 77 S.Ct. 665, 1 L.Ed.2d 664, the court, in an opinion by the late Chief Judge John J. Parker, made reiteration of this judicial limitation, holding that the plaintiffs there were not entitled to seek judicial relief, 'for the reason that it nowhere appears that they have exhausted their administrative remedies under the North Carolina Pupil Enrollment Act, and are not entitled to the relief which they seek in the court below until these administrative remedies have been exhausted'. At page 727 of 238 F.2d. See also Holt v. Raleigh City Boar of Education, 4 Cir., 265 F.2d 95, 98.
 
 
 34
 In concluding, we shall make reference once more to the provision of our order directing that the defendants be enjoined from continuing to maintain the system of unconstitutional segregation, which has previously existed in the District, and which the defendants have heretofore taken no steps to disestablish; and to the provision, which we have discretionarily included, allowing the proceeding to remain open on the records of the District Court, to permit of the filing of such supplemental complaint, if any, as might be entitled to be presented, in case of any unconstitutional application of the 1959 Act against the plaintiffs or of any other unconstitutional action on the part of the District against them.
 
 
 35
 It was on the basis of the considerations which have been set out herein that we made affirmance, as has been indicated, of Case No. 16,327, the appeal taken by the plaintiffs, and that we made reversal and remand of Case No. 16,323, the appeal taken by the defendants, subject to the directions referred to in the preceding paragraph hereof.
 
 
 
 [1]
 Initiated Act Number 2 of 1956, Ark.Stat. 80-1519 et seq.-- referred to in the trial court's opinion as the Pupil Enrollment Act of 1956
 
 
 [2]
 Legislative Act No. 461 of 1959-- referred to in the trial court's opinion as the Pupil Assignment Act of 1959
 
 
 [3]
 The trial court gave recognition, as against the 1956 Act, to the provision in the 1959 Act that 'All laws or parts of laws in conflict herewith are hereby repealed', but further held that, in any event, there was no difference of controlling substance between them in relation to the facial constitutionality of each of them
 
 
 [4]
 No separate consideration is necessary of the superseded Arkansas Pupil Assignment Law of 1956, as related to its operativeness at the time the plaintiffs instituted this suit, because of its similarity in substance to the 1959 Act and its equal constitutionality facially