**Deborah A. NORTHCROSS et al., Plaintiffs-Appellants,**

v.

**The BOARD OF EDUCATION OF the CITY OF MEMPHIS, TENNESSEE, et al., Defendants-Appellees.**

**No. 14642.**

United States Court of Appeals
Sixth Circuit.

March 23, 1962.

Rehearing Denied April 26, 1962.

As Amended May 15, 1962.

Certiorari Denied June 25, 1962.

See 82 S.Ct. 1586.

Constance Baker Motley, New York City (Thurgood Marshall, New York City, A. W. Willis, Memphis, Tenn., on the brief; R. B. Sugarmon, Jr., H. T. Lockard, B. L. Hooks, B. F. Jones and Ira H. Murphy, Memphis, Tenn., of counsel), for appellants.

Jack Petree, Evans, Petree & Cobb, Memphis, Tenn. (Larry B. Creson, Laughlin, Watson & Creson, Memphis, Tenn., on the brief), for appellees.

Before CECIL, WEICK and O'SULLIVAN, Circuit Judges.

CECIL, Circuit Judge.

This appeal involves the public school system of the City of Memphis, Tennessee.

The appellants were plaintiffs in the District Court for the Western District of Tennessee. They are eighteen minors and their parents, all of the Negro race, who bring the action on behalf of them-

selves, and all other Negro children and their parents in Memphis, similarly situated. The defendants-appellees are the Board of Education of the City of Memphis, the members thereof individually, and the superintendent of schools. The parties will be referred to hereinafter as plaintiffs and defendants.

Jurisdiction of the District Court is invoked by virtue of section 1343(3), Title 28 U.S.C. By this act, jurisdiction is conferred "To redress the deprivation, under color of any State law, * * * custom or usage, of any right privilege or immunity secured by the Constitution of the United States * * * for equal rights of citizens or of all persons within the jurisdiction of the United States."

It is alleged in the complaint, inter alia, that the defendants maintain and operate a compulsory biracial school system in the City of Memphis, in which certain schools are designated for Negro students only and staffed by Negro personnel, and certain other schools are designated for white students only and staffed by white personnel. It is further alleged that there is separate geographical zoning for the Negro and white schools and that these zones in some instances overlap so that both Negro and white students are in the same zone. The plaintiffs also allege that they have not exhausted their remedies under the Tennessee Pupil Assignment Law for the reason that it does not provide an adequate remedy for the relief they seek.

By their complaint, briefly stated, the plaintiffs seek an order enjoining the defendants from operating a biracial school system or in the alternative for an order to the board to submit a plan for the reorganization of the schools on a unitary non-racial basis.

The defendants in their answer deny that they maintain a compulsory biracial school system in the city of Memphis. They admit that certain of their schools are attended and staffed solely by members of the white race and that certain other schools are attended and staffed solely by members of the Negro race. They concede that there is no racial integration of their schools for the reason that no members of the Negro race have made applications for transfers to white schools. The defendants allege in their answer that the Tennessee Pupil Assignment Law affords to plaintiffs and defendants a simple and easy method of complying with the requirements of the Supreme Court of the United States in the school segregation cases.

A trial was had in the District Court upon the issues presented by the pleadings, after which the District Judge made findings of fact and conclusions of law and entered judgment on May 2, 1961.

The trial judge found as facts, that the defendants do not operate a compulsory biracial school system or maintain a dual schedule or pattern of school zone lines based upon race or color; that the school zone maps introduced in evidence have no significance as evidence of a biracial school system; that the Tennessee Pupil Assignment Law furnishes the plaintiffs an effective and adequate remedy for integration and as effective a plan for compliance with the decisions of the Supreme Court of the United States as the Court could devise; that the defendants' intention to effect integration of the school system under the Pupil Assignment Act has been open and generally known to the public and that the plaintiffs and their attorneys were so advised at a public meeting of the Board of Education on February 6, 1960; that the Board has evidenced all good faith to the public and to the court of its intention to comply with the decision of the Supreme Court.

By judgment entry the court sustained the plaintiffs' prayer for alternative relief by approving the Tennessee Pupil Assignment Law as a plan for desegregation and denied further relief to the plaintiffs for the reason that the defendants did not operate a biracial school system and the plaintiffs had not exhausted their administrative remedies under the Assignment Law.

On December 14, 1961, after this appeal was docketed, the defendants filed in this Court a motion to dismiss the appeal. The basis of the motion is that the

820

Board desegregated the schools of Memphis on October 3, 1961, and that the issues involved in the appeal have now become moot. This motion is supported by an affidavit of the president of the Board of Education.

In this affidavit it is alleged that on August 28, 1961, forty-two Negro children made application to desegregate the public school system of Memphis; that four of them abandoned their applications and thirty-eight were considered by the Board; and of these applicants thirteen were admitted to three schools previously attended by white children.

This is denominated in the affidavit as desegregation of the Memphis schools and it is alleged that it was accomplished through the cooperation of members of the Negro race, the news media and public officials of Memphis. It is further alleged that it was accomplished without fanfare or strife, and that it has been generally accepted by all of the citizens of the community.

By filing this motion and affidavit, after the appeal was docketed, the defendants enlarged the record without an opportunity to the plaintiffs to be heard on the subject involved. The affidavit does not state what criteria was applied in granting these transfers, but we were informed in oral argument that they were based on scholarship by tests not given to white children in the same school.

At the time this action was brought, according to the evidence, there were in the city of Memphis approximately fifty-five white elementary school units, fifteen white junior high schools and nine white senior high schools. At the same time, there were approximately thirty-one Negro elementary school buildings, seven Negro junior high, and six Negro senior high units. There were separate technical high schools and separate schools for Negro and white crippled children. There are approximately 100,000 pupils in the Memphis school system, forty-four percent of whom are Negroes.

The Pupil Assignment Law was enacted by the Tennessee legislature in 1957. Sections 49–1701—49–1764 Tenn. Code.

At the time this action was filed in March of 1960, no Negro pupil had ever been transferred to a white school, nor had a white pupil ever been transferred to a Negro school, under the operation of the law. The superintendent of schools testified that the Assignment Law is not applied to children entering school for the first time. In the case of such children, the principal to whom application is made will take into consideration the applicant's race and residence in determining an assignment to a school. The evidence also shows that there are dual area zone maps, one for white schools and one for Negro schools. These zones may overlap and there may be Negro and white children in the same zone, but each goes to the school for his respective race.

One of the plaintiffs, Mrs. McFerrin, applied in 1958 for admission of her son to Vollentine, a white school. Mrs. McFerrin and her son lived in an area assigned to Hyde Park, a Negro school. The Vollentine school is located four blocks from their home and on the same side of the street. Hyde Park is ten blocks from their home and reached by an indirect route. She asked for the transfer for convenience, but the superintendent denied her application for the reason that transfers were not granted for convenience.

In 1960 two Negro girls who were enrolled in Melrose High School, (Negro), sought a transfer to South Side High School, (white). They had moved within four blocks of the South Side School. They were told that they were in the Booker T. Washington (Negro) district and were offered transfers to that school. It required a thirty to forty-five minute bus ride to get to Melrose, and Washington was almost equally far away, and they refused the transfer.

In May 1954, the Supreme Court of the United States decided that "Separate educational facilities are inherently unequal," and that segregation of the races in separate schools deprived the minority group of the equal protection of the laws guaranteed by the Fourteenth Amendment. Brown v. Board of Education, 347

U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. At this time, the Constitution of Tennessee provided that white and Negro children were not to be received as scholars together in the same school. Art. 11, Sec. 12, Tenn. Const. The statutes of Tennessee also prohibited white and Negro children attending the same schools. Sections 49–1005, 49–1107, and 49–3701 Tenn. Code.

It is conceded that these provisions of the Constitution and statutes were no longer enforcible after the Brown decision. The defendants now claim that compulsory segregation of the races for school purposes has been abandoned in the city of Memphis, and that the Board of Education has adopted a plan for full compliance with the second Brown decision, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, for the admission of Negroes to its public schools on a racially non-discriminatory basis.

The questions presented are whether the schools of Memphis are being operated on a racially non-discriminatory basis and whether the Pupil Assignment Law can in and of itself constitute a plan for such operation.

This law declares that the public schools shall be free to all persons above the age of six; provides that the board of education of each city shall enroll and assign all pupils to schools and subject to review or certain exceptions this exercise of power by the board is final; that certain criteria or factors, some twenty in number, may be considered in making assignments; that each school child shall be assigned to the same school he attended prior to January 25, 1957, until graduation therefrom; that the board may prescribe a date for filing applications for admission or transfer and refuse to consider applications filed after such date; and that the board may conduct investigations, surveys, and give tests in determining the schools to which pupils shall be assigned.

There is a further provision that if there is dissatisfaction with the assignment of a child, both parents may make application for a hearing before the board and a transfer to another school. The board shall consider each case separately and its decision shall be based on the criteria heretofore mentioned. From an unfavorable decision of the board, both parents may petition the chancery court of the county where the board of education is located for review. The review is based on a transcript of the proceedings before the board. The findings of the board shall be final if supported by substantial evidence on the entire record. The court has no power to suspend an order of the board until after final determination, except after a preliminary hearing and upon a prima facie showing by the petitioner that the board has acted arbitrarily, fraudulently or unlawfully, to the manifest detriment of the child. A further appeal may be taken to the court of appeals or the Supreme Court by both parents or the board of education.

The Pupil Assignment Law might serve some purpose in the administration of a school system but it will not serve as a plan to convert a biracial system into a nonracial one.

In Kelly v. Board of Education of City of Nashville, 159 F.Supp. 272, 276, D.C. M.D.Tenn., it was held that the administrative remedy under the act was inadequate to end racial discrimination in the public school system of Nashville, Tennessee.

In Gibson v. Board of Pubic Instruction of Dade County, Florida, 272 F.2d 763, 766, C.A.5, the court said: "That being true, we cannot agree with the district court that the Pupil Assignment Law, or even that the Pupil Assignment Law plus the Implementing Resolution, in and of themselves, met the requirements of a plan of desegregation of the schools or constituted a 'reasonable start toward full compliance' with the Supreme Court's May 17, 1954, ruling. That law and resolution do no more than furnish the legal machinery under which compliance may be started and effectuated. Indeed, there is nothing in either the Pupil Assignment Law or the Implementing Resolution clearly inconsistent with a

continuing policy of compulsory racial segregation."

And in Gibson v. Board of Public Instruction of Dade County, Florida, et al., 246 F.2d 913, 914, C.A.5, the court said, at p. 914: "Neither that nor any other law can justify a violation of the Constitution of the United States by the requirement of racial segregation in the public schools. So long as that requirement continues throughout the public school system of Dade County, it would be premature to consider the effect of the Florida laws as to the assignment of pupils to particular schools." See also, Mannings v. Board of Public Instruction of Hillsborough County, Florida, 277 F. 2d 370, C.A.5.

In Parham v. Dove, 271 F.2d 132, C.A. 8, the court required three Negroes, individually, who sought transfers to white schools to exhaust their administrative remedies. However, the court said, at p. 137: "In this field of constitutional paramountcy, *a placement or assignment statute is entitled to be accorded recognition only as an implement or adjunctive element on the part of a state for effecting an orderly solution to its desegregation difficulties,* in proper relationship to its other school-system problems, but with a subservience to the supreme-law declaration of the Brown cases as to all imposed segregation and the obligation owed to get rid thereof within the tolerance entitled to be allowed play under these decisions for accomplishing that result." (Emphasis added.)

This position was reaffirmed in Dove v. Parham, 282 F.2d 256, 261, C.A.8, where the court held that assignment and placement laws were "subordinate to the duty to move forward, by whatever means necessary, to correct the existing constitutional violation with 'all deliberate speed'."

Opinions of the Fourth Circuit have been cited in support of the defendants' position.[1] We consider them, as did the Fifth Circuit. "Obviously, unless some legally nonsegregated schools are provided, there can be no constitutional assignment of a pupil to a particular school. We do not understand that the Fourth Circuit has ruled to the contrary. The net effect of its rulings, as we understand them, is that the desegregation of the public schools may occur simultaneously with and be accomplished by the good faith application of the law providing for the assignment of pupils to particular schools. If that understanding is correct, then we readily agree." Gibson v. Board of Public Instruction of Dade County, Florida, 272 F.2d 763, 767, C.A.5.

More than seven years had elapsed from the time of the first Brown decision to the time of the trial and judgment of this case in the District Court. More than four years had passed from the time of the enactment of the Assignment Law, and yet at that time the schools of Memphis were as biracial as they had been under the Tennessee Constitution and statutes.

The defendants admit in their brief that the Memphis school system was in fact a biracial one. They say, however, that this does not result from compulsion on their part. It is voluntary on the part of the Negro pupils and parents because they do not avail themselves of the transfer provisions of the law.

It was decided in the first Brown case that the separation of children of similar age and qualifications solely because of race was a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States. Since that decision, there cannot be "Negro" schools and "white"

1. Hood v. Board of Trustees of Sumter County School District No. 2, Sumter County, South Carolina, 286 F.2d 236, C.A. 4; McCoy v. Greensboro City Board of Education, 283 F.2d 667, C.A. 4; Holt v. Raleigh City Board of Education, 265 F.2d 95, C.A. 4, cert. denied, 361 U.S. 818, 80 S.Ct. 59, 4 L.Ed.2d 63; Hood v. Board of Trustees of Sumter County School District No. 2, Sumter County, South Carolina, 232 F.2d 626, C.A. 4, cert. denied, 352 U.S. 870, 77 S.Ct. 95, 1 L.Ed.2d 76; Carson v. Board of Education of McDowell County, 227 F.2d 789, C.A. 4.

schools. There can now be only schools, requirements for admission to which must be on an equal basis without regard to race.

■ Minimal requirements for non-racial schools are geographic zoning, according to the capacity and facilities of the buildings and admission to a school according to residence as a matter of right. "Obviously the maintenance of a dual system of attendance areas based on race offends the constitutional rights of the plaintiffs and others similarly situated and cannot be tolerated." Jones v. School Board of City of Alexandria, Virginia, 278 F.2d 72, 76, C.A.4.

The Pupil Assignment Law assigned, by legislative enactment, all children who had previously been enrolled in the schools to the same schools that they had attended under the constitutional and statutory separate racial system. They were to remain in these same schools until graduation unless transferred by a request of both parents. At the end of the school year of graduation, from an elementary or junior high, they were assigned to a school for the next year. As a matter of practice, Negroes were assigned to so-called "Negro" schools. Although it is claimed that beginning pupils could apply to any school, the practice was for the Negro children to be assigned to "Negro" schools.

■ It is argued that the transfer provisions of the law create a voluntary system and that, by reason of them, there is no compulsory segregation of races. These transfer provisions do not make of this law a vehicle to reorganize the schools on a non-racial basis. Nor has the practice for four years under the law been in the direction of establishing non-racial schools. Negro children cannot be required to apply for that to which they are entitled as a matter of right. If they are deprived of their constitutional rights, they are not required to seek redress from an administrative body before applying to the courts. Borders v. Rippy, 247 F.2d 268, C.A.5. The burden rests with the school authorities to ini-

tiate desegregation. Cooper v. Aaron, 358 U.S. 1, 7, 78 S.Ct. 1401, 3 L.Ed.2d 5.

Any pupil through both parents may request a transfer but in the final analysis it is up to the school board to grant or reject it. Although an appeal may be taken to the courts, it would be an expensive and long drawn out procedure, with little freedom of action on the part of the courts. In determining requests for transfers, the board may apply the criteria heretofore mentioned. None of these criteria is based on race, but in the application of them, one or more could always be found which could be applied to a Negro. The denial of the transfers herein referred to is significant of the practical application of the transfer provisions of the law.

The trial judge found that the defendants do not operate a compulsory biracial school system. It might be said that by reason of the transfer aspect of the law, it is not compulsory. The real question is, Do they maintain separate schools? The first Brown case decided that *separate schools organized on a racial basis are contrary to the Constitution of the United States.*

■ The inescapable conclusion is that at the time of the judgment in this case the schools of Memphis were operated on a basis of "white schools" for white children and "Negro schools" for Negroes. The findings of fact that the school zone maps introduced in evidence have no significance as evidence of a biracial school system, and that the defendants do not maintain a dual schedule or pattern of school zone lines, based upon race or color, are contrary to the evidence and clearly erroneous. As we have previously said, the Pupil Assignment Law cannot serve as a plan to organize the schools as a non-racial system.

■ We do not discuss exhaustion of remedies under the statute for the reason that we hold the Pupil Assignment Law is not adequate as a plan for reorganizing the schools into a non-racial system. Kelly v. Board of Education of City of Nashville, 159 F.Supp. 272, 277,

D.C.M.D.Tenn.; Gibson v. Board of Public Instruction of Dade County, Florida, 246 F.2d 913, C.A.5.

The motion to dismiss the appeal must be and it is hereby overruled. The admission of thirteen Negro pupils, after a scholastic test, out of thirty-eight who made application for transfer, is not desegregation, nor is it the institution of a plan for a non-racial organization of the Memphis school system.

We are impressed that the defendants honestly and sincerely desire to comply with the law, but they have pursued the mistaken belief that "full compliance" as required by the Supreme Court can be had under the Pupil Assignment Law. The practice over a long period of time of separate schools in certain geographical areas of our nation has become a way of life in those areas, and we realize that a change is not easy to accomplish. But as this Court must follow the supreme law of the land, as interpreted by the Supreme Court; so must boards of education follow it. Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401. We urge the defendants herein to adopt and submit to the District Court some realistic plan for the organization of their schools on a non-racial basis, in "full compliance" with the mandate of the Supreme Court, and to do so "with all deliberate speed."

The judgment of the District Court is reversed with instructions to restrain the defendants from operating a biracial school system in Memphis, or in the alternative to adopt a plan looking toward the reorganization of the schools, in accordance with the Constitution of the United States. The District Court should retain jurisdiction of the case during the period of transition. Brown v. Board of Education, 349 U.S. 294, 301, 75 S.Ct. 753.

PER CURIAM.

This cause is before the Court on petition for rehearing.

One point raised by the petition is that the Court made an erroneous statement in its opinion, to the effect that Negro children were given scholastic tests not given to white children, in order to be admitted to "white" schools, under the Tennessee Pupil Assignment Law.

This matter arose out of a motion of the appellees to dismiss the appeal supported by an affidavit. In this affidavit it was alleged that the schools of Memphis were desegregated by the admission of thirteen Negro students to "white" schools. The affidavit did not specify what criteria were applied in order to allow these admissions.

This motion and affidavit tended to change the character of and add to the issues presented on the appeal without an adequate opportunity for a hearing. There was no denial that thirteen students had been thus transferred and there was nothing in the affidavit to be traversed by counter-affidavit. This Court cannot accept the conclusion of the appellees that these transfers under the Tennessee Pupil Assignment Law constituted desegregation.

Upon inquiry in oral argument, the Court understood that scholastic tests were given to the Negro students and not to the white students of the same schools. The necessity for this inquiry arose by reason of the interjection of the motion into the record, as heretofore stated.

The Court does not wish to make an incorrect statement of fact and will amend its opinion, in respect to the claimed error, if it is shown to be an error. For this purpose, the Court will permit the parties to submit affidavits upon the sole question of how scholastic tests were applied and to whom, in connection with the transfers.

The Court in its opinion concluded that the Pupil Assignment Law, while not unconstitutional on its face and while it may serve some function in proper school administration, it cannot serve as a vehicle for desegregation. Other points raised by the petition for rehearing have been previously considered and found to be without merit.

The petition for rehearing will be denied.