216 F.Supp. 295 (1963)
Johnnie DAVIS and Barbara Davis, minors, by Mrs. Annie Davis, their mother and next friend, et al., Plaintiffs,
v.
BOARD OF EDUCATION OF CHARLESTON CONSOLIDATED SCHOOL DISTRICT NO. 7 OF MISSISSIPPI COUNTY, MISSOURI, a public body corporate, Mr. J. H. Marshall, Superintendent of Charleston Consolidated School District No. 7, Mr. Charles A. Farmer, President of Board of Education, City of Charleston, Mississippi County, Missouri, and Mr. H. Sutherland, Mr. Woodrow Graham, Mrs. Ed Marshall, Jr., Mr. O. T. Dalton, Jr., Mrs. W. Clifton Banta, Members of the Board of Education of Charleston Consolidated School District No. 7 of Mississippi County, Missouri, Defendants.
No. S 62 C 51.
United States District Court E. D. Missouri, Southeastern Division.
April 11, 1963.
*296 Clyde S. Cahill, Jr., Robert Allen Sedler, St. Louis, Mo., for plaintiffs.
Blanton & Blanton, Sikeston, Mo., and James M. Haw, Charleston, Mo., for defendants.
MEREDITH, District Judge.
All questions of fact and of law having been tried before and submitted to the Court for decision, the Court makes the following findings of fact and conclusions of law.
This action was brought by minor plaintiffs through their parents and next friends, residents of the Charleston Consolidated School District No. 7, Mississippi County, Missouri, and residents of other areas whose students are permitted to attend said school district, against the defendants, the Charleston Consolidated School District No. 7, the Board of Education of Charleston Consolidated School District No. 7, and its Superintendent, as a class action seeking integration of the public schools of said school district.
The relief sought is a permanent injunction, enjoining the defendant Board, its agents, servants and employees, or attorneys, from refusing to operate the schools within Charleston, Mississippi County, Missouri, on a unitary racial basis and from refusing to assign pupils to such schools without regard to color. In the alternative a decree is sought directing the defendant Board to present a complete plan, within a period of time to be determined by the Court, for the reorganization of the entire school system of Charleston, Mississippi County, Missouri, into a unitary, non-racial system, *297 which shall include a plan for an assignment of children on a non-racial basis and directing the Board to desist from operating its school on a segregated racial basis. In the event the Court directs the defendants to produce a desegregation plan, plaintiffs request the Court to retain jurisdiction pending approval and implementation of the plan.
Said School District operates two senior high schools: the Lincoln High School, having a current enrollment of 155 pupils; and the Charleston High School, having a current enrollment of 462 pupils. Said School District operates four elementary schools; the A. D. Simpson School, having a current enrollment of 190 pupils; the Eugene Field School, having a current enrollment of 329 pupils; the Mark Twain School, having a current enrollment of 195 pupils; and the Lincoln School, having a current enrollment of 520 pupils. The Lincoln Elementary School and the Lincoln High School are physically situated in the same building.
At present there are 1161 pupils of the white race attending the schools operated by said school district, 714 of whom are attending elementary school and 447 of whom are attending high school. At present there are 690 pupils of the negro race attending the schools operated by said School District, 520 of whom are attending elementary school and 170 of whom are attending high school.
Plaintiffs have exhausted any and all administrative remedies provided by said Board, and individually, collectively, through their parents and their attorneys have sought admission on behalf of themselves and others similarly situated to the schools operated by said Board on a non-segregated basis.
On and prior to May 17, 1954, the date of the decision of the United States Supreme Court in Brown v. Board of Education of Topeka, Kansas, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and the mandate in said above-styled case, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, the school system of Charleston Consolidated School District No. 7 was operated on a segregated racial basis in compliance with the laws of Missouri.
Subsequent to the Brown decision, the defendants' recognition of the constitutional prohibition against operating schools on a racial basis consisted of two tentative undertakings:
First, permissive transfer on application of negro residents of the Charleston School District No. 7 from the eleventh and twelfth grades of the all-negro Lincoln High School to the eleventh and twelfth grades of the previously all-white Charleston High School. This was an attempt to make the equivalent education available to negro students in the eleventh and twelfth grades because certain courses formerly offered at Lincoln High School were discontinued because of insufficient student interest. These courses, including Spanish, Algebra II, Geometry, Shorthand and Band, are offered at Charleston High School, but are not offered at Lincoln High School. Some courses, such as Advanced Business and American Problems, are offered at Lincoln High School and not at Charleston High School. This transfer policy was arranged so that any student properly arranging his curriculum could obtain all courses offered at either school necessary for college entrance. Negro children of high school age, not residents of the Charleston Consolidated School District No. 7, were permitted to transfer to the Charleston High School in the eleventh and twelfth grades, but this practice was discontinued in September of 1962.[1]
Secondly, the Board employed in 1956 an elementary supervisor for all elementary schools for the stated purpose of bringing up the scholastic level of all elementary pupils and particularly to raise the scholastic level of the negro pupils in Lincoln Elementary School to that *298 of the white students in the Eugene Field, Mark Twain and A. D. Simpson Elementary Schools.
While the defendant Board is of the opinion that the scholastic level of the negro children in elementary schools has not been and is not now equivalent to that of the white children in elementary schools, that opinion is not based on any objective test nor does objective evidence support the opinion.
At the present time, apart from the permissive transfers in the eleventh and twelfth grades to the Charleston High School, the school system's assignment of pupils and general operation follows the same pre-1954 pattern of racial segregation. All negro children of elementary school age attend and are permitted to attend only the Lincoln School which contains the first eight grades. All white children of elementary school age attend the first five grades in the Eugene Field Elementary School or the Mark Twain Elementary School. All white children attend the sixth grade of school at the Eugene Field Elementary School and the seventh and eighth grades at the A. D. Simpson School.
The quality of education furnished by the Board in the elementary schools is substantially equal in all schools and the Lincoln Elementary School has the same curricula, the same quality of instruction and the same extent of educational facilities as the A. D. Simpson, Mark Twain and Eugene Field Elementary Schools. The Board operates a special class at the Lincoln Elementary School for children having serious reading difficulties, but operates no such classes at the Mark Twain Elementary School or the Eugene Field Elementary School for children having serious reading difficulties, even though there are children attending those schools who have serious reading difficulties. The number of children at the Mark Twain and Eugene Field Schools having serious reading difficulties is less than the number at the Lincoln School, which has a substantially larger enrollment than either of the other schools.
Initial assignment to any elementary school is not made on the basis of any test relating to academic ability, intelligence quotient, socio-economic background, prior knowledge, experiences, adaptability, motivation, incentive or any other intangible factors relating to desire or ability to learn. Initial assignment between the Lincoln Elementary School on one hand and the Mark Twain and Eugene Field Schools on the other is made on the basis of race. Initial assignment between the Mark Twain and the Eugene Field Schools is made on the basis of residence and perhaps other administrative criteria. Progression through the grades is determined by the school previously attended and the satisfactory scholastic achievement in the grade previously attended.
As indicated above, at the high school level, negro children are permitted to attend only the Lincoln High School, except for those residents of the Charleston Consolidated School District No. 7 who may transfer in their eleventh and twelfth years to the Charleston High School. All white children of high school age attend only the Charleston High School. Negro children of high school age, not residents of the Charleston Consolidated School District No. 7 attend and are permitted to attend only the Lincoln High School, while all white children similarly situated attend only the Charleston High School.
The quality of education furnished by the defendant Board in the operation of the Lincoln High School differs from that furnished by the Board in the operation of the Charleston High School in that the following courses offered at Charleston High School are not offered at the Lincoln High School: Speech, Spanish, Geography, Chemistry, Physics, Trigonometry and Analytical Geometry, Advanced Algebra, Secretarial Practice, Shorthand and Bookkeeping, General Woodworking, General Shop, General Drafting and General Metals. The opportunity to take any of these courses, however, is open to the negro student on *299 transferring from Lincoln High to Charleston High in the eleventh and twelfth grades.
The Board furnishes bus transportation to certain pupils attending schools operated by said Board. In the operation of said buses, the Board has pursued for many years and is currently pursuing a policy, custom, practice and usage of compulsory racial segregation, having certain buses reserved for the sole and exclusive use of white pupils and certain buses reserved for the sole and exclusive use of negro pupils.
The facts do not support the necessity of a delay in refraining from operating the schools on a racial basis beyond the opening of the 1963 school year.
The facts are clear that the schools are operated in a racially discriminatory manner. Compulsory racial segregation in the operation of a school system and any activity related thereto is unconstitutional and the plaintiffs and those whom they represent are entitled to have their rights declared and enforced accordingly. Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).
This Court has jurisdiction of the parties and this action, which is filed pursuant to Title 28 U.S.C. §§ 1331, 1343(3), and Title 42 U.S.C. § 1983, for injunctive and declaratory relief to redress rights of the plaintiffs and those similarly situated secured by the equal protection and due process clauses of the Fourteenth Amendment of the Constitution of the United States of America.
The action of the Board in permitting transfer of negro students in the eleventh and twelfth grades of Lincoln High School and the employment of an elementary supervisor looking to the unspecified future time when integration might be instituted, cannot be considered in 1963 as evidencing objective good-faith compliance with its constitutional duty to initiate a complete plan for desegregation. The subjective good faith of the Board is not the test. As stated in Dove v. Parham, 282 F.2d 256 (8th Cir., 1960) and repeated in Norwood v. Tucker, 287 F.2d 798 (8th Cir., 1961) at page 804:
"* * * The question here, however, is not state of mind but required action. Required action is measurable only by objectivity. * * *"
and at page 809:
"Standards of placement cannot be devised or given application to preserve an existing system of imposed segregation. Nor can educational principles and theories serve to justify such a result. These elements, like everything else, are subordinate to and may not prevent the vindication of constitutional rights. An individual cannot be deprived of the enjoyment of a constitutional right, because some governmental organ may believe that it is better for him and for others that he not have this particular enjoyment. The judgment as to that and the effects upon himself therefrom are matters for his own responsibility."
The Board may not initially assign by race and put the burden upon negro pupils to apply for transfer to a particular school. The practice of assigning all negro pupils to the Lincoln High School and permitting transfers in the eleventh and twelfth grades is, therefore, held to be unconstitutional. Northcross v. Board of Education of City of Memphis, 302 F.2d 818 (6th Cir., 1962).
The Board may not determine admission to a particular school upon criteria that is applied to one race and not to the other and may not justify its refusal to integrate upon such criteria unless applied equally and non-discriminatorily to children of both races. Norwood v. Tucker, supra; Dove v. Parham, supra; Green v. School Board of City of Roanoke, 304 F.2d 118 (4th Cir., 1962).
We turn now to the proposed decree. Defendants have moved for permission to file a plan of reorganization and have *300 submitted a suggested plan of reorganization. Under the plaintiffs' proposed permanent injunction, the Court would order the defendant Board, effective in September, 1963, to assign pupils, in the case of high school students, according to the students' choice, and in the case of elementary school students, according to the students' choice of the school nearest his home.
Defendants' suggested plan would become effective in 1963 for high school students, in 1964 for seventh and eighth grades, in 1965 for fifth and sixth grades, in 1966 for third and fourth grades, in 1967 for first and second grades. Since we have found that delay in integration cannot be justified beyond 1963, the suggested plan is unacceptable in the proposed date of effectiveness, September, 1967. But, even apart from the unacceptable delay suggested, the plan's methods and means of reorganization cannot be approved by the Court. First, on their face, the geographical attendance areas do not suggest on what basis they are drawn and we have not been informed as to the effect. It does not appear that the attendance areas are based on proximity to schools nor is the projected approximate number of white and negro pupils from each attendance area shown so as to suggest that the areas were drawn for the purposes of limiting enrollment to the physical capacities of the schools. The transfer provisions leave to the Board the discretion to refuse or permit relocation of pupils from the school of their original assignment by geographic area to subjective considerations which are neither pertinent to the Board's duty to provide a method of operation on a non-racial basis nor susceptible of objective and practical application in both initial assignment and subsequent reassignment. For example, the criteria on which the Board's decision would be made with regard to transfer include the following: the effect of the admission of new pupils upon established or proposed academic program, the suitability of established curricula for particular pupils, the scholastic aptitude and relative intelligence or mental energy or ability of the pupil, the psychological qualification of the pupil for the type of teaching and associations involved; the effect of admission of the pupil upon the academic progress of other students in particular school or facility thereof; the psychological effect upon the pupil of attendance at a particular school, the possibility or threat of friction or disorder among pupils or others; the possibility of breaches of the peace or ill will or economic retaliation within the community, the home environ-psychological relationships with other pupils and with teachers; the morals, conduct, health and personal standards of the pupils. The suggested plan is objectionable as it appears to be a method of perpetuating segregation. While reorganization properly may be achieved through a combination of attendance areas charted on the basis of residence and school capacity and provisions for transfer based on valid necessities in the efficient administration of the schools, this plan does not appear to be so designed.
Although the suggested plan is unacceptable, we are of the opinion that whenever possible the School Board, which has the responsibility for operating the schools, should make the necessary provisions for operating them on a non-racial basis. Therefore, before a permanent decree and order is entered in this matter, the defendants will be given 30 days from the date of the filing of these findings of facts and conclusions of law to submit, in accordance with the views expressed herein, a plan which will provide for the reorganization and operation of the schools and related facilities including school bus transportation on a nonracial basis at all levels beginning in September, 1963.
NOTES
[1] At a preliminary hearing held on October 9, 1962, this Court on issuance of a preliminary injunction ordered the admission to the Charleston High School of seven negro students at Lincoln High School who were non-residents of the Charleston Consolidated School District No. 7.