305 F.2d 783
 Louis McNEESE, Jr., a minor, by Mabel McNeese, his mother and next friend, and
Elouise Dickerson, a minor, by Charles Dickerson, her father and next friend, and
Betty Wade and Judith Wade, minors, by Thelma Wade, their mother and next friend, and
For these and all others similarly situated and who may become parties to this action, Plaintiffs-Appellants,
v.
BOARD OF EDUCATION FOR COMMUNITY UNIT SCHOOL DISTRICT NUMBER 187, CAHOKIA, ILLINOIS, and
Clarence D. Blair, County Superintendent of Schools for St. Clair County, Illinois, and
Robert F. Catlett, Superintendent of Schools for Community Unit School District Number 187, Cahokia, Illinois, Defendants-Appellees.
 No. 13615.
 United States Court of Appeals Seventh Circuit.
 July 5, 1962.
 
 Raymond E. Harth, Clayton R. Williams, Alton, Ill., Charles H. Jones, Jr., Chicago, Ill., for plaintiffs-appellants, Rogers, Rogers, Strayhorn & Harth, Chicago, Ill., of counsel.
 Reuben L. Hedlund, Chicago, Ill., for amicus curiae.
 Howard F. Boman, Wm. C. Dunham, East St. Louis, Ill., for defendants-appellees.
 Thomas M. Thomas, of Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for the Bd. of Education of the City of Chicago.
 Before SCHNACKENBERG, CASTLE and KILEY, Circuit Judges.
 KILEY, Circuit Judge.
 
 
 1
 This is a class suit on behalf of minor plaintiffs, and all others similarly situated, for redress of alleged deprivation, under color of Illinois law, of their rights to non-segregated public educational facilities in Community Unit School District No. 187, St. Clair County, Illinois.[1] The District Court dismissed the suit on defendants' motion. Plaintiffs have appealed.[2]
 
 
 2
 Plaintiffs are Negro elementary school students in the Chenot School in District No. 187, and all are residents of St. Clair County. The substance of their amended complaint is that before construction of the Chenot School in 1957 plaintiffs were compelled to attend the Centreville School in the District under a program which subjected them to discrimination because of their color; and that since 1957 the Chenot School has been maintained under a planned program of discrimination against them because of their color. They seek a decree declaring that the policies of District 187 are unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;[3] an injunction restraining defendants from maintaining their discriminatory policies; and a mandatory injunction requiring defendants to register plaintiffs in "racially integrated" public elementary schools in the District.
 
 
 3
 The judgment of dismissal by the District Court was based on the ground that plaintiffs had "failed to comply in the remotest manner with" their administrative remedy under the Illinois School Code, Ill.Rev.Stat., 1961, ch. 122, § 22-19. Plaintiffs contend that the judgment was erroneous because under the facts alleged in the amended complaint and admitted by defendants' motion they were not required to resort to the administrative remedy provided in the Illinois School Code; and that, in any event, that remedy is not administrative, but judicial and is inadequate. In their complaint they expressly state they have not exhausted the State remedy.
 
 
 4
 For the first contention they rely upon Mannings v. Board of Public Instruction, 5 Cir., 277 F.2d 370 (1960); Borders v. Rippy, 5 Cir., 247 F.2d 268 (1957); Orleans Parish School Bd. v. Bush, 5 Cir., 242 F.2d 156 (1957); Bruce v. Stilwell, 5 Cir., 206 F.2d 554 (1953); Kelly v. Bd. of Ed. of City of Nashville, 159 F. Supp. 272 (M.D.Tenn.1958).
 
 
 5
 In Mannings the Board of Education had taken no affirmative steps under the Brown segregation cases[4] to effect the policy of desegregation. In Borders the Board admitted a policy which denied Negroes admittance to school because of color. In Orleans plaintiffs had exhausted their administrative remedy. The court nevertheless decided that pertinent Louisiana Constitution and statutory provisions were per se unconstitutional under the Brown cases. In Bruce it was admitted the Negro plaintiffs were denied admission to school because of color. In Kelly the court held the administrative power was already "committed in advance to a continuation of compulsory segregation."
 
 
 6
 These cases are not helpful to plaintiffs because of the admission, in each of them, of the fact of discrimination on which the unconstitutionality of the laws and policies involved was determined. That is not true here. Plaintiffs assume as a premise that defendants' motion admitted that before and since 1957, defendants have maintained a racially segregated school system which deprived plaintiffs of "equal opportunity for education." The premise begs the question. Defendants' motion admits facts well pleaded but does not admit the alleged conclusion[5] that the well pleaded facts resulted in discrimination against plaintiffs because of their color.
 
 
 7
 The amended complaint, so far as pertinent, alleges that the Negroes in District 187, including plaintiffs, were compelled to live in Negro "ghettoes." There is no allegation that this is due to any conduct of defendants. It is alleged that defendants had these "ghettoes" in mind when they made up the "attendance area policy" under which children in exclusively Negro areas are not permitted to attend schools in other areas. There is no allegation that the "attendance area policy" is unconstitutional per se as in the Orleans case or that the areas were not drawn consistently with an orderly administration of schools, in the light of the population facts as defendants found them, and in a constitutional manner. This distinguishes Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed. 2d 110 (1960) where the Alabama law redefining boundaries of the City of Tuskegee was plainly, deliberately designed to disenfranchise Negroes.
 
 
 8
 The amended complaint alleges that the Chenot School "attendance area" was planned and drawn so as to make it exclusively Negro. But it is not alleged that the area was not planned and drawn on a rational basis in a proper administrative function, or that it could or should have been planned or drawn otherwise. It is alleged that prior to 1957 Chenot area children attended Centreville School where they were required to attend afternoon classes while white children in the Centreville area were compelled to attend exclusively morning sessions. But it is alleged that "certain slow white fifth and sixth grade" children attended classes all day and that since 1957 fifth and sixth grades from Centreville's overcrowded school, consisting of 3% Negro and 97% white students, attended Chenot School.
 
 
 9
 We think this analysis of the amended complaint is sufficient to distinguish the cases relied on by plaintiff. It is analogous to a statute which is not unconstitutional "on its face"; and it fails to allege a cause of action which justifies a failure to resort to administrative remedies. Carson v. Warlick, 4 Cir., 238 F. 2d 724, cert. denied, 353 U.S. 910, 77 S.Ct. 665, 1 L.Ed.2d 664 (1956). Because the amended complaint does not allege school board policies which are unconstitutional in themselves, plaintiffs are required to resort to the remedy held forth in the Illinois School Code before seeking the aid of a Federal Court. Ibid; Parham v. Dove, 8 Cir., 271 F.2d 132 (1959).
 
 
 10
 The fact that this is a class suit attacking alleged segregation policies and that the Carson and other Fourth Circuit cases referred to by plaintiffs involved individual claims of denial of individual civil rights is of no consequence in our decision. The plaintiffs in their class suit are presenting claims based on the denial of civil rights of the individual members of the class represented in the suit. And the class action was a mere procedural vehicle by which the individual rights, common to all members of the class, were presented to the court. The basis of the claims of transgression of individual rights is the same in this case as in Carson and others to the same effect.
 
 
 11
 We see no merit to the plaintiff's contention that the remedy held out in the Illinois School Code is judicial rather than administrative and that therefore the rule of exhaustion of administrative remedy is inapplicable. In Cook v. Davis, 5 Cir., 178 F.2d 595 (1949) the school administrators had greater power to correct discrimination in teachers' salaries complained of there than the Superintendent of Public Instruction has under the Illinois School Code to correct the alleged unlawful conduct here. We think, nevertheless, we must apply to plaintiffs' contention here the reasons given by the court there in holding the State remedy administrative and not judicial: The Superintendent of Public Instruction in Illinois has no judicial power and his finding of fact as to whether segregation on account of race or color is being practiced in a school district is not binding in a suit at law or in equity; a complaint before him "may cause an adjustment" if there is substance to the allegations in that complaint; and his decision, when made, merely ripens the controversy for judicial action if needed. On this point plaintiffs are not aided by Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939). The pertinent issue there was whether plaintiff had to resort to the State Courts to "vindicate his grievance" of denial of franchise.
 
 
 12
 The final contentions made by plaintiffs are that the Illinois administrative remedy is not available to individuals since it must be initiated by a complaint signed by at least fifty persons; and that the remedy is inadequate because the Superintendent of Public Instruction has no power himself to correct the discrimination if he finds it to exist. The requirement of fifty signatures is not in itself an unreasonable one, since the function of the requirement is similar to that of a class suit, that is, one of convenience and orderly procedure for presentation in a common cause many individual complaints instead of many individual particular causes. Also, defendants point out with force that the allegations of the complaint indicate that the School Code remedy would not practically be unavailable to plaintiffs. Furthermore, the School Code gives the Superintendent the power to initiate a hearing whenever he has reason to believe discrimination may exist in any school district. There is no claim that any individual in the class represented by plaintiffs requested the Superintendent to initiate a hearing. And, in practice, if an individual is denied the remedy he may then turn to the Federal Courts.
 
 
 13
 We must assume the administrative officials will do their duties under the School Code, Carson v. Warlick, 4 Cir., 238 F.2d 724, 728, cert. denied, 353 U.S. 910, 77 S.Ct. 665, 1 L.Ed.2d 664 (1956), and it is generally accepted in the cases[6] that Federal Courts should not interfere with a State's operation and administration of its schools, nor with the performance of administrative duties, in the absence of necessity, until administrative remedies have been exhausted.
 
 
 14
 For the reasons given, we hold that the District Court did not err in "dismissing" plaintiffs' suit on the ground that plaintiffs had not resorted to their administrative remedy under the Illinois School Code.
 
 
 15
 The judgment of the District Court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 42 U.S.C.A. "§ 1983. Civil action for deprivation of rights
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 28 U.S.C. "§ 1343. Civil rights and elective franchise
 "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: * * * (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."
 
 
 [2]
 This court granted leave to the Chicago Board of Education to intervene as amicus curiae
 
 
 [3]
 U.S.Const. amend. XIV. § 1. "* * * No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."
 
 
 [4]
 Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) and related cases
 
 
 [5]
 2 Moore, Federal Practice ¶ 12.08
 
 
 [6]
 E. g., Parham v. Dove, 8 Cir., 271 F. 2d 132 (1959); Carson v. Warlick, 4 Cir., 238 F.2d 724, cert. denied, 353 U.S. 910, 77 S.Ct. 665, 1 L.Ed.2d 664 (1956)